39008. MOORE, Administrator v. ATLANTA
TRANSIT SYSTEM, INC.

DECIDED NOVEMBER 9, 1961—REHEARING DENIED
DECEMBER 12, 1961.

J. E. B. Stewart, James O. Goggins, for plaintiff in error.

Crenshaw, Hansel, Ware, Brandon & Dorsey, Hugh M. Dorsey, Jr., Jule W. Felton, Jr., Charles R. Adams, Jr., contra.

EBERHARDT, Judge. At the hearing held on the defendant's motion for summary judgment, the plaintiff sought to introduce a letter from one Dr. Weinstein, a physician employed by the defendant to examine plaintiff's decedent, and particularly that part of the letter in which the doctor related the decedent's history of her complaint given to him, as follows: "In July, 1956, I was boarding an Atlanta Transit bus on Moreland Avenue, S.E. The bus driver closed the door of the bus as I was entering. I was struck on the right chest and back. This caused me to fall on steps of bus. It knocked me out temporarily. On the same day of the accident, I saw Dr. Huie, Glenwood Avenue. He X-rayed my ribs and back, and I saw Dr. Huie twice after the accident. He put a brace on me. I stayed in bed most of the time for 4 weeks. I could not get up or down without much pain. I did and still have a thumping pain in my back." The defendant objected to the introduction of the letter as being "hearsay and irrelevant, immaterial and has

no connection with any allegation of negligence set out in the petition and that it was a self-serving declaration." The trial judge sustained the objection. The plaintiff indicated that all of his evidence as to how the decedent had been injured was of this type, consisting of what the plaintiff's decedent told various doctors and other persons.

The grounds of plaintiff's appeal are two-fold. First, he contends that a motion for summary judgment is not the proper method for deciding questions relative to the admissibility of evidence; and second, that the type of evidence adduced by plaintiff was admissible.

■ There is no merit in the plaintiff's first contention. The purpose of the Summary Judgment Act of 1959 was to eliminate the necessity for a jury trial where there is no genuine issue as to any material fact in the case. *Scales v. Peevy*, 103 Ga. App. 42, 46 (118 SE2d 193); *Dillard v. Brannan*, 217 Ga. 179 (121 SE2d 768). The "genuine issue" test is not met unless the evidence offered is competent and admissible. Dyer v. McDougal, 201 F2d 265 (2d Cir.); 6 Moore, Federal Practice, 2d Ed. 1953, § 56.02[9], p. 2019; 3 Barron & Holtzoff, Federal Practice & Procedure, 1958 Rev., § 1235, pp. 148-149 and § 1237, p. 164. Appolonio v. Baxter, 217 F2d 267 (6th Cir.), is directly in point. There the defendant's motion for summary judgment was held properly granted where plaintiff's case was not provable by competent evidence because of the Tennessee "Dead Man's Statute." Resort to Federal cases is appropriate because the act of 1959 is substantially identical with Rule 56 of the Federal Rules of Civil Procedure. *McCallum v. Twiggs County Bank*, 172 Ga. 591 (1) (158 SE 302, 74 ALR 932).

If further support is necessary, we need only look to that portion of the act of 1959 dealing with affidavits (Ga. L. 1959, p. 235; *Code Ann.* § 110-1205) where it is provided that affidavits "shall set forth such facts as would be admissible in evidence . . . " Thus it appears that the affidavits and other material presented to support plaintiff's pleadings must present facts which would be admissible in evidence in their own right. To hold otherwise would require a jury trial where one is unnecessary, a requirement that is contrary to the intent of the Summary Judgment Act of 1959.

■ However, the problem of the admissibility of the evidence in this case still remains. Unless such evidence is admissible, we would be constrained under the first division of this opinion to hold that the defendant's motion for summary judgment was properly granted, for in that event it would appear from plaintiff's admissions that all of his evidence as to the alleged occurrence is of the same character; and from the admissions of both plaintiff and defendant that there is no known witness who saw it. Hence there would be no competent evidence to raise any material issue.

It is clear that the evidence offered here was hearsay within the definition set forth in *Code* § 38-301 as "that which does not derive its value solely from the credit of the witness, but rests mainly on the veracity and competency of other persons." The Code recognizes exceptions to the hearsay rule in the remainder of § 38-301, but concludes with the assertion that "The very nature of the evidence shows its weakness, and it is admitted only in specified cases from necessity."

Before proceeding further, perhaps an inquiry into the history and background of the hearsay rule and its exceptions would be helpful. In the words of Morgan, "There was a time when all relevant hearsay was admissible, and there never has been a time when Anglo-American courts have rejected all hearsay." 2 Morgan, Basic Problems of Evidence (1954), p. 221. And professor Wheaton in "What Is Hearsay?", 46 Iowa L. Rev. 210, citing Holdsworth, Morgan and Wigmore, says that "It seems clear that in the very early days of the jury trial there was no objection to the use of hearsay, for the jury reached its decision from information that it gained outside the courtroom. During the sixteenth century the jury began to get information from testimony in court and by the early seventeenth century it received most of its information from that source. During the first three-quarters of the seventeenth century hearsay was constantly received as corroborative evidence. It was in the last quarter of that century that the rule against hearsay came into existence. By the middle of the eighteenth century the exclusionary doctrine was definitely settled." The reason for the rule, as he then points out, is basically the absence of opportunity to cross-examine and a fear that the admission of hearsay would

afford too many opportunities for inaccuracy, mistake, fraud, and untrustworthiness. Various theories to support the numerous exceptions to the hearsay rule have been advanced. Professor Wigmore, for instance, relies on the principles of "a Circumstantial Probability of Trustworthiness, and a Necessity," as the guides. 5 Wigmore, Evidence (3d Ed., 1940) § 1420. Morgan states that no theory will explain all of the exceptions, and proposes the dual test as "(a) whether the hearsay is such that the trier can put a reasonably accurate value upon it as evidence of the matter it is offered to prove, and (b) whether direct testimony of the declarant is unavailable, or if available, is likely to be less reliable." 2 Morgan, Basic Problems of Evidence (1954), p. 222. The American Law Institute has suggested the following: "Evidence of a hearsay declaration is admissible if the judge finds that the declarant (a) is unavailable as a witness, or (b) is present and subject to cross-examination." Model Code of Evidence, American Law Institute (1942), Rule 503.

The multitudinous exceptions spawned by the hearsay rule have caused vexatious problems for courts operating under common-law principles. For example, there are now from ten to twenty exceptions recognized in the various jurisdictions. McCormick, Evidence (1954), § 300, p. 626. We have seen that even the authorities are unable to agree on the exceptions and the theoretical basis for them. Professor Green says that the exceptions are "best explained by history rather than logic." Green, Georgia Law of Evidence (1957), § 225, p. 503. McCormick agrees with the statement saying that "The Exceptions were struck off in the heat of trial as improvisations intended to be played by ear, but they fail of that purpose because the classes are grown so many and the boundaries so meandering that no one can carry any large part of this hearsay-exception-learning in his head." McCormick, Evidence (1954), § 300, p. 626. Wigmore indicates his lack of sympathy in the following passage: "The needless obstruction to investigation of truth caused by the Hearsay rule is due mainly to the inflexibility of its exceptions, to the rigidly technical construction of those exceptions by the Courts, and to the enforcement of the rule when its contravention would do no harm, but would assist in obtaining a

complete understanding of the transaction." 5 Wigmore, Evidence (3d Ed., 1940), § 1427, p. 209..

The above attempt to delineate the broader picture of the hearsay rule and its exceptions with generous brush strokes from the learned authorities will not, of course, control the immediate question before us. Resort must be had to Georgia authorities.

The plaintiff cites as supporting the admissibility of his evidence here the cases of *Mutual Life Ins. Co. v. Davis,* 48 Ga. App. 742 (173 SE 471); *Lathem v. Hartford Acc. &c. Co.,* 60 Ga. App. 523 (3 SE2d 916); *City of Atlanta v. Crouch,* 91 Ga. App. 38 (84 SE2d 475); *Flemming v. St. Paul-Mercury Indem. Co.,* 91 Ga. App. 582 (86 SE2d 637); and *Orkin Exterminating Co. v. Wright,* 92 Ga. App. 224 (88 SE2d 205). The defendant cites *Smith v. U. S. Fidelity &c. Co.,* 94 Ga. App. 507 (95 SE2d 35), as also supporting the proposition but requests that this court distinguish *Smith* and all the other cases cited above, excepting *Mutual Life Ins. Co. v. Davis,* 48 Ga. App. 742, supra, on the basis that different, more liberal rules of evidence apply to workmen's compensation cases, and asks that *Davis* be overruled.

We can find no support for this contention in the Workmen's Compensation Act and, on the, contrary, find implied rejection in *Code* § 114-710. In that section, dealing with appeals to the superior court, one of the grounds on which the order or decree of the board may be set aside is that "(4) There is not sufficient *competent* evidence in the record to warrant the members in making the order or decree complained of . . ." *Code* § 114-710 (Emphasis added). How can it be determined whether there is "sufficient *competent* evidence" without applying the rules of evidence? While we find no Georgia case in which it is held that compensation cases are to be accorded treatment different from others in this respect, we do note that the appellate courts of this State have applied the common-law rules of evidence in numerous cases, e. g., *Alexander v. Bremen,* 53 Ga. App. 676 (3) (187 SE 141) (hearsay rule); *U. S. Fidelity &c. Co. v. Bohannan,* 36 Ga. App. 34 (135 SE 319) (res gestae). And, without the effect of a liberalizing statute, the idea that there is a distinction in the rules of evidence to be applied

to workmen's compensation cases has been specifically refused elsewhere (Hamilton v. Huebner, 146 Neb. 320, 19 NW2d 552, 559, 163 ALR 1), even where a liberalizing statute has been enacted. Williams v. Jahncke Service, Inc., 217 La. 1078 (48 S2d 93). We may say parenthetically, however, that in Johnston v. Payne-Yost Const. Co., 292 Pa. 509 (141 A 481) and Jacobs v. Village of Buhl, 199 Minn. 572 (273 NW 245) a different view is expressed. There may be others. But we think that the liberal construction referred to in such cases as *Wilson v. Maryland Cas. Co.*, 71 Ga. App. 184, 188 (30 SE2d 420) quite obviously pertains to the provisions of the Workmen's Compensation Act and not to the rules of evidence to be applied in determining whether there was competent evidence upon which to base the award.

Turning then to a consideration of the cases we find that *Mutual Life Ins. Co. v. Davis,* 48 Ga. App. 742, supra, involved an action on the double indemnity portion of a life insurance policy. The plaintiff's decedent, a traveling salesman, had stated to a physician operating on him that he had "had a shake-up in a Ford car." The alleged accident had happened while the plaintiff's decedent was on a sales trip and, except for the statement above, the only evidence of the accident adduced on the trial was circumstantial. The court held that the verdict was authorized by the evidence. In discussing the admissibility of the decedent's statement to his physician, the court, after discussing the necessity of admitting evidence in certain cases, went on to say, at page 746: "It would seem that where death has sealed the mouth of a witness, the same necessity would make admissible his representations to his physician as to his injury and its cause, it being contended that such injury was the cause of his death, and there being no other witness thereto except the deceased." Chief Judge Broyles dissented on the basis that the physician's testimony of what the decedent had told him, being hearsay, was inadmissible.

*Lathem v. Hartford Acc. & Indem. Co.,* 60 Ga. App. 523, supra, is the next Georgia case in which this factual pattern appears. In that workmen's compensation case, there were no witnesses to the alleged injury suffered by claimant's decedent. The court reversed the superior court judge's ruling that there was not

sufficient competent evidence to support the award made by the board. The only evidence offered by the claimant as to the where and how of the injury was that of the decedent's physician, wife, and relatives which consisted of what the decedent told them had happened. Judge MacIntyre, with Chief Judge Broyles and Judge Guerry concurring, held that "When death has sealed the mouth of a witness, and there is no other witness as to such deceased witness's injury and its cause, it being contended that the injury was the cause of his death, 'the declarations of a party himself, to whomsoever made, are competent evidence, when confined strictly to such complaints, expressions, and exclamations as furnish evidence of a present-existing pain or malady, to prove his condition, ills, pains, and symptoms, whether arising from sickness or from an injury by accident or violence. If made to a medical attendant, they are of more weight than if made to another person.' "

In *City of Atlanta v. Crouch,* 91 Ga. App. 38, supra, the issue was the admissibility of what the decedent had told his wife and son-in-law. The court stated in the headnote, "The declarations and complaints made by the deceased were admissible and competent where there were no other witnesses to the alleged injury and the cause thereof." It is to be noted that in *Crouch* there was no statement to a physician or other medical attendant and that the defendant produced witnesses who saw the decedent during the day who said they heard no complaint from him.

In a similar case, the decedent's statement to his wife as to the cause and location of the injury was held admissible. *Flemming v. St. Paul-Mercury Indem. Co.,* 91 Ga. App. 582, supra. The same situation was presented and the same ruling made in *Orkin Exterminating Co. v. Wright,* 92 Ga. App. 224, supra. Again, in *Smith v. U. S. Fidelity &c. Co.,* 94 Ga. App. 507 (2), supra, the claimant's wife and one of her friends were permitted to testify as to what the decedent told them. However, in this case the decedent had also told a physician that he was not ill and that he had never felt better. This, combined with other evidence contradicting the claimant's version of the case, was held sufficient to support the order of the board denying compensation. And see *White v. St. Paul-Mercury Indem. Co.,* 93 Ga. App. 124 (91 SE2d 62) (semble).

Thus we see the evolution in the application of the rule of necessity admitting the statements of deceased persons where there is no other evidence available from statements to physicians only (*Davis*, supra), to statements to physician, wife and relatives (*Lathem*, supra), to statements to the wife and son-in-law (*Crouch*, supra), to statements to the wife only (*Flemming* and *Wright*, supra). The circumscription is completed where the defendant's utilization of such evidence is a primary factor in a ruling in his favor. (*Smith*, supra).

While we realize that the Georgia rule as set out above may represent a bench mark in what Professor McCormick has called "The Borderland of Hearsay" (McCormick, The Borderland of Hearsay, 39 Yale L. J. (1930), p. 489), it is not without support in other jurisdictions. In Dabbert v. Travelers Ins. Co., 2 Cin. Super. 98 (1870), (Bigelow's Life & Acc. Ins. Reps. 366 (1875)), the court (Judge Alonzo Taft) held that the deceased declarant's statement to his physician was "competent evidence to prove what was the actual cause of his illness and death . . . to avoid a failure of justice." Here the necessity existed because there were no witnesses to the alleged accident. Foulkrod v. Standard Acc. Ins. Co., 343 Pa. 505 (23 A2d 430) involved an action on an accident policy where it was alleged that the deceased had fallen off a stool while alone in a room. His statements to his wife and physician, unobjected to, were admissible and were substantive proof of the accident. A Wisconsin case held admissible the treating physician's testimony relating the statements of a deceased woman on whom an abortion had been allegedly performed as to the facts of the abortion. Kraut v. State, 228 Wis. 386 (280 NW 327). In another abortion case, an attending nurse was permitted to testify what the deceased had said. Gilchrist v. Mystic Workers of the World, 188 Mich. 466 (154 NW 575, AC 1918C 757).

In Kentucky, statements of a deceased declarant to a physician that "A mosquito bit him," (Omberg v. United States Mut. Assn, 101 Ky. 303, 40 SW 909, 72 ASR 413), and that he slipped and fell carrying watermelons (Massachusetts Bonding &c. Co. v. Duncan, 166 Ky. 515, 179 SW 472), were held admissible as showing when and how the accident happened

but not where. ¯And see Valentine v. Weaver, 191 Ky. 37 (228 SW 1036); Hills Admx. v. North American Acc. Ins. Co., 186 Ky. 273 (215 SW 428). On the other hand, in a personal injury action the physician's testimony as to plaintiff's statement of where (on a street car) the incident occurred was held properly admitted. Alabama Power Co. v. Edwards, 219 Ala. 162 (121 S 543). And, in an F.E.L.A. case, the decedent's declarations to his physician of the place and circumstances of the injury were said to have been properly received. Stewart v. Baltimore & O. R. Co., 137 F2d 527 (2d Cir.).

Other cases allowing the admission of hearsay testimony based on necessity are Lee Pong Tai v. Acheson, 104 F. Supp. 503 (E. D. Pa.) and Dallas County v. Commercial Union Assur. Co., 286 F2d 388 (5th Cir.). The Lee Pong Tai case concerned a deportation proceeding. There, the affidavit of one since deceased was held admissible to prove the birthplace of a person approximately 70 years of age. It was said there that " . . . the evidence must be weighed in the light of the defendant's ability to produce evidence . . ." In the Dallas County case, Circuit Judge Wisdom upheld the admission of a newspaper account of a fire alleged to have happened some 58 years before with the comment, "There is no procedural canon against the exercise of common sense in deciding the admissibility of hearsay evidence."

Additional cases may be found where the declarations were held admissible when elicited on cross-examination (Johnson v. Chicago &c. R. Co., 51 Iowa 25, 50 NW 543; and Dean v. Wabash R. Co., 229 Mo. 425, 129 SW 953), and when defendant's witness, present at the physical examination, contradicted the plaintiff's statements. Galveston &c. R. Co. v. Easton, 257 SW 924 (Tex. Civ. App.). And see, Missouri &c. Ry. Co. v. Rose, 49 SW 133 (Tex. Civ. App.); Pullman Palace Car Co. v. Smith, 79 Tex. 468 (14 SW 993, 23 ASR 356, 13 LRA 215); Ferne v. Chadderton, 375 Pa. 302 (100 A2d 854). In an Oklahoma divorce case, the statement of the plaintiff wife to her physician that the defendant husband "stomped her" was admitted to show the case history, nature of the injuries and the need for future medical attention. Smith v. Smith, 311 P2d 229 (Okla.).

There are a number of cases which present factual situations similar to that found in *Flemming v. St. Paul-Mercury Indem. Co.*, 91 Ga. App. 582, supra, in which testimony as to the decedent's statements was held admissible. Wilhelmi v. American Ry. Express Co., 6 N. J. Mis. R 674 (142 A 555) (physician); Greenfarb v. Arre, 62 N. J. Super. 420 (163 A2d 173) (physician, wife and others); Hillman v. Utah Power &c Co., 56 Idaho 67 (51 P2d 703) (physician and nurse); Youngblood v. Colfax Motor Co., 12 La. App. 415 (125 S 883) (physician); Columbia Steel Co. v. Industrial Comm'n, 92 Utah 72 (66 P2d 124) (wife); Valentine v. Weaver, 191 Ky. 37 (228 SW 1036) (physician); F. Eggers Veneer Seating Co. v. Industrial Comm'n, 168 Wis. 377 (170 NW 280) (physician); Bohan v. Lord & Keenan, Inc., 98 N. H. 144 (95 A2d 786) (physician and wife); Wright v. Kerrigan, [1911] 2 Ir. R. 303 (7 Irish Law Rep. 360) (physician, wife and others); Lloyd v. Powell Duffryn Steam Coal Co., [1914] A. C. 733 (semble), *reversing* [1913] K. B. 1309 (admissible as admission against interest). In the following cases, the legislature had adopted a statute liberalizing the evidence rules in workmen's compensation cases but the court did not rely primarily on the statute. Baker v. Industrial Comm'n, 44 Ohio App. 539 (186 NE 10); Standard Oil Co. v. Mealey, 147 Md. 249 (127 A 850). Additional cases may be cited where the hearsay was admitted but without a showing of necessity. Bober v. Independent Plating Corp., 28 N. J. 160 (145 A2d 463); Shell Oil Co. v. Industrial Comm'n, 2 Ill. 2d 590 (119 NE2d 224). In many instances, hospital records have been held admissible to prove the truth of their contents. Annot. 44 ALR2d 535. But see *Heard v. Heard*, 99 Ga. App. 864 (110 SE2d 76); and *Whitener v. Baly Tire Co.*, 98 Ga. App. 257, 260 (105 SE2d 775).

The common nexus of these cases is the necessity of the situation. The *ex necessitate* principle was recognized in another situation involving the admission of hearsay evidence over one hundred years ago in Georgia. In *Feagin v. Beasley*, 23 Ga. 17, and *Tilman v. Stringer*, 26 Ga. 171, Justice Lumpkin held that testimony as to the representations of a slave were admissible. (Similar cases may be found in Annot. 67 ALR 10, 21). At that time slaves were not competent to testify against a free white person. See *Grady v. State*, 11 Ga. 253 (2). The neces-

sity in the slave cases was recognized specifically in *Atlanta, K. & N. Ry. Co. v. Gardner*, 122 Ga. 82, 97 (49 SE 818). The court in *Gardner* also pointed out another instance of necessity which existed prior to the time when parties were made competent to testify in their own behalf by adoption of the act of 1866 (Ga. L. 1866, p. 138, now *Code* § 38-1603). And see *Graves v. Harris*, 117 Ga. 817, 818 (45 SE 239). Even the admissibility of expressions of present pain is predicated on the necessity rule. See *Lassiter v. Poss*, 85 Ga. App. 785 (3) (70 SE2d 411), where it is said at p. 790 that the condition "might be impossible to show by other testimony." Similar situations of necessity arise in the case of infants of tender years who would be too lacking in understanding to give direct testimony (*Grant v. State*, 124 Ga. 757, 759 (4), 53 SE 334; *Louisville & N. R. Co. v. Studdard*, 34 Ga. App. 570 (5), 130 SE 532; see Welter v. Bowman Dairy Co., 318 Ill. App. 305, 47 NE2d 739) ; or where one competent at the time of an event has later become insane (*Code* § 38-1607), or loses his power of speech (*Conner v. State*, 25 Ga. 515 (4), 71 AD 184). Cf. Ward v. City of Pittsburgh, 353 Pa. 156 (44 A2d 553). A Georgia commentator has said that the use of the necessity principle is common. Green, Georgia Law of Evidence, 1957, § 225. *Code* § 38-301 recognized the exceptions as "admitted only in specified cases from *necessity.*" (Emphasis added). The cases from other jurisdictions specifically recognizing the rule of necessity are numerous. E.g., Eby v. Travelers' Ins. Co., 258 Pa. 525 (102 A 209) ; Tromblee v. North Amer. Acc. Ins. Co., 158 NYS 1014; Boyd v. Industrial Comm'n, 88 Utah 173 (48 P2d 498) ; Dabbert v. Travelers Ins. Co., 2 Cin. Super. 98, supra; Baker v. Industrial Comm'n, 44 Ohio App. 539, supra; Foulkrod v. Standard Acc. Ins. Co., 343 Pa. 505, supra.

The theory that the rule of necessity is valid where the declarations of a decedent are the only method of proof available finds at least partial support in McCormick's work. He states, "Some courts have accepted the view that these statements as to external cause when relevant to treatment and made to a doctor employed for that purpose are admitted as evidence of the fact stated. This conclusion, *particularly in actions for death*

*where there were no eyewitnesses other than the victim,* seems the view most consonant with the demands of justice." McCormick, Evidence (1954) p. 564, § 266. (Emphasis added). Another commentator has said that "Hardship in a particular case does not warrant an exception to the hearsay rule, but the existence of a class of cases in which hearsay is the only possible proof *necessitates* an exception." 3 Jones, Evidence, p. 2191 (Henderson Rev. 1926) (Emphasis added). And, as Judge Learned Hand said, "It would of course be undesirable to open the doors to hearsay evidence when better was available, but I ask you whether Baron Gilbert was not right in saying that men should use in their disputes the best means they can get to reach the truth?" 3 N.Y. City Bar Ass'n Lectures on Legal Topics, 1921-22, at p. 99 (as quoted 5 Wigmore, Evidence (3rd Ed. 1940) p. 436, § 1576).

These quotations are in accord with *Jasper County v. Butts County,* 147 Ga. 672 (95 SE 254) where it is said (p. 673), "The modern tendency is to relax rather than to restrict the rules for the admission of evidence, to the end that the discovery of truth may be aided, rather than obstructed." Accord: *Dade County v. State of Georgia,* 77 Ga. App. 139, 145 (48 SE2d 144); *Manners v. State,* 77 Ga. App. 843 (3), 849 (50 SE2d 158); *Rogers v. State,* 80 Ga. App. 585, 590 (56 SE2d 633); *Maxwell v. State,* 94 Ga. App. 625, 626 (95 SE2d 767). And, as Justice Lumpkin said, "Truth, common sense, and enlightened reason, alike demand the abolition of all those artificial rules which shut out any fact from the jury, however remotely relevant, or from whatever source derived, which would assist them in coming to a satisfactory verdict." *Johnson v. State,* 14 Ga. 55, 62.

Our holding then, following the previous rulings cited above, is that the declarations of a decedent, or where there is equivalent unavailability of the declarant, to whomsoever made are admissible in evidence if there are no other witnesses to the alleged occurrence. "Other witnesses" within the meaning of this rule would include eyewitnesses, whether favorable or unfavorable to the party offering the evidence, but would exclude those who merely testify that they did not see the alleged oc-

currence, as in *Crouch v. City of Atlanta,* 91 Ga. App. 38, supra; *Orkin Exterminating Co. v. Wright,* 92 Ga. App. 224, supra; and *Smith v. U.S. Fidelity &c. Co.,* 94 Ga. App. 507, supra. In this situation, the evidence may be offered by either the plaintiff or the defendant. *Smith v. U. S. Fidelity &c. Co.,* 94 Ga. App. 507, supra. Most, if not all, jurisdictions in which this rule is recognized hold, as in *Lathem,* supra, that when the statement or declaration is made to a physician with a view of obtaining treatment it is entitled to greater weight than if made to others or under other circumstances. The statement here offered, though made to a doctor, was not made with a view of obtaining treatment by him, but was made to one who was to examine the declarant and evaluate her condition for the Transit System, against whom she had made a claim for damages. Such a statement, like a confession in a criminal case, should be received with caution and scanned with care, for, as Chief Justice Bleckley reminds us in *Atlanta St. R. Co. v. Walker,* 93 Ga. 462, 465 (21 SE 48), there is "scarcely anything less reliable than a sick plaintiff's opinion of his own case when he is in pursuit of damages." Indeed, if the statement had been made *after* her suit was filed it would require even more careful scrutiny, and might be held inadmissible. See *Atlanta Ry. Co. v. Gardner,* 122 Ga. 82, 95 (11), supra. Uniform Rules of Evidence 63 (4) (c), if in force here, would admit the statement only "if made in good faith prior to the commencement of the action." However, it is to be noted that the accident is alleged to have occurred July 24, 1956, and the statement was made to the doctor December 4, 1957, while the action was filed July 13, 1958. Moreover, it appears from the answers to requests for admissions that there were other similar statements by the decedent to others and at other times. Thus, we hold that the statement was admissible, since that "which tends to establish the issue in controversy is admissible, even if it is not of itself sufficient for that purpose." *Carter v. Marble Products, Inc.,* 179 Ga. 122, 127 (175 SE 480), and it is for the jury, under appropriate instructions, to determine its weight and credibility.

We do not bottom this ruling on the res gestae principle. While the utilization of this principle is often proper, its mere

intonation has no magical effect and cannot be used as a catch-all for difficult cases. See comments and quotations in 6 Wigmore, Evidence (3rd Ed. 1940) § 1767; 2 Morgan, Basic Problems of Evidence, p. 248 n. 1; McCormick, Evidence (1954) § 274; and Annot. 163 ALR 15 (passim). See also *Cox v. State,* 64 Ga. 374, 410 (37 AR 76). Professor Slough has a very informative article on the matter of spontaneous statements in 46 Iowa L. Rev. 224, and at page 253 deals with the situation where the declarant is unavailable. But the res gestae rule, in our judgment, has no application here. Rather, we specifically base our ruling on the well-recognized rule of necessity.

In the light of what has been said, the evidence offered by the plaintiff should have been admitted, and it must follow that the trial judge improperly granted the defendant's motion for summary judgment.

*Judgment reversed. Carlisle, P. J., and Custer, J., concur.*

ON MOTION FOR REHEARING.

EBERHARDT, Judge. Able counsel for defendant in error, in a motion evidencing exhaustive study of the authorities, particularly those from our Georgia courts, urge that the many cases cited in their motion require a different result. We have read with care all of them, but we do not agree. The cases relied upon fall generally into distinguishable categories of instances where the deceased declarant's statement was offered as a part of the res gestae but was held, under the circumstances of the case, not to be (*W. & A. R. Co. v. Beason,* 112 Ga. 553, 37 SE 863; *Hunter v. State,* 147 Ga. 823, 95 SE 668; *Davis v. Metropolitan Life Ins. Co.,* 48 Ga. App. 179, 172 SE 467; *East Tenn. &c. R. Co. v. Maloy,* 77 Ga. 237, 2 SE 941; *White v. Southern Ry. Co.,* 123 Ga. 353, 51 SE 411; *Fulton v. Metropolitan Cas. Ins. Co.,* 19 Ga. App. 127, 91 SE 228; *Higgins v. Trentham,* 186 Ga. 264, 197 SE 862), or as a dying declaration which was held not admissible in a civil case under the rule concerning such (*Davis v. Metropolitan Life Ins. Co.,* 48 Ga. App. 179, supra; *Wooten v. Wilkins,* 39 Ga. 223, 99 AD 456), to show an intent or a state of mind (*Miller v. Everett,* 192 Ga. 26, 14 SE2d 449; *Paris v. Paris,* 207 Ga. 341, 61 SE2d 491; *Gullatt v. Thompson,* 61 Ga. App. 253, 6 SE2d 447; *Wooten v. Wilkins,* supra), to show

delivery of a deed or lack thereof (thus affecting title to land) (*Blalock v. Miland*, 87 Ga. 573, 13 SE 551; *Smith v. Smith*, 206 Ga. 461, 57 SE2d 611; *Miller v. Everett*, 192 Ga. 26, supra; *Dollar v. Thompson*, 212 Ga. 831, 96 SE2d 493; *Fuller v. Fuller*, 213 Ga. 103, 97 SE2d 306), declarations against interest (or in his own interest), as affecting title (*Whitaker v. Smith*, 33 Ga. 237; *Massee-Felton Lbr. Co. v. Sirmans*, 122 Ga. 297, 50 SE 92; *Miller v. Everett*, 192 Ga. 26, supra; *Blalock v. Miland*, 87 Ga. 573, supra; *Freeman v. Brewster*, 93 Ga. 648, 21 SE 165; *Hollis v. Sales*, 103 Ga. 75, 29 SE 482; *Groover v. Wilkes*, 145 Ga. 714, 89 SE 761; *Hill v. McLendon*, 147 Ga. 733, 95 SE 232; *State Banking Co. v. Miller*, 185 Ga. 653, 196 SE 47; *Higgins v. Trentham*, 186 Ga. 264, supra; *Smith v. Smith*, 206 Ga. 461, supra), cases in which there was other evidence or there were other witnesses (whether favorable or unfavorable) available (*Drawdy v. Hesters*, 130 Ga. 161, 60 SE 451, 15 LRA (NS) 190; *Hunter v. State*, 147 Ga. 823, supra; *East Tenn. &c. R. Co. v. Maloy*, 77 Ga. 237, supra; *White v. Southern Ry. Co.*, 123 Ga. 353, supra; *Davis v. Metropolitan Life Ins. Co.*, 48 Ga. App. 179, supra; *Lanier v. Huguley*, 91 Ga. 791, 18 SE 39; *Freeman v. Brewster*, 93 Ga. 648, supra; *Hollis v. Sales*, 103 Ga. 75, supra; *Groover v. Wilkes*, 145 Ga. 714, supra; *Hill v. McLendon*, 147 Ga. 733, supra; *State Banking Co. v. Miller*, 185 Ga. 653, supra; *Higgins v. Trentham*, 186 Ga. 264, supra; *Hobbs v. Houston*, 190 Ga. 505, 9 SE2d 749; *Smith v. Smith*, 206 Ga. 461, supra; *Paris v. Paris*, 207 Ga. 341, supra; *Rabun v. Wynn*, 209 Ga. 80, 70 SE2d 745; *Fuller v. Fuller*, 213 Ga. 103, supra; *Gullatt v. Thompson*, 61 Ga. App. 253, supra).

Two cases are cited which, on their facts, closely parallel the case here. *Bolton v. Columbia Cas. Co.*, 34 Ga. App. 658 (130 SE 535), and *Poole v. East Tenn. &c. Ry. Co.*, 92 Ga. 337 (17 SE 267). These, however, are distinguishable. In each of them the ruling was altogether on the basis of the rule of res gestae, and in neither was the rule of necessity dealt with. Moreover, in *Poole* the case turned upon the physical condition of a railroad crossing, a matter about which there should have been ample other evidence available.

Counsel urge that since the statement here was in the interest

of the deceased declarant it is necessarily excluded by the terms of *Code* § 38-309. We do not agree. The provisions of the Code sections dealing with hearsay are not exhaustive of those in which hearsay is admissible and do not pre-empt the area. *Rea v. Pursley*, 170 Ga. 788, 793 (154 SE 325) ; *Ellis v. O'Neal*, 175 Ga. 652, 657 (165 SE 751). And see, on the matter of such declarations when they are "self-serving," McCormick, Evidence, § 275 (1954).

The doctrine of stare decisis has been invoked. "This is an action for negligence; and while even as applicable to such cases an erroneous decision, if thoroughly established, might be followed as a matter of judicial policy, yet the rule of stare decisis is usually considered as one more appropriately applied to vested property rights." *Rogers v. Carmichael*, 184 Ga. 496, 511 (192 SE 39). Dean Roscoe Pound has stated that stare decisis is " . . . primarily useful as a principle where rules of property and rules of commercial transactions [are] involved." Pound, Law Finding Through Experience and Reason, 39-40 (1960). Other jurisdictions have followed this rule and the rule of *Rogers*, 184 Ga. 496, supra, *e. g.*, Smith v. Glen Alden Coal Co., 347 Pa. 290 (32 A2d 227, 234) ; Fuller v. Virginia Trust Co., 183 Va. 704 (33 SE2d 201, 205). And, if the cases upon which there is reliance in the invoking of the doctrine were in all respects applicable and on no basis distinguishable, we should feel obliged, under that rule, to follow the principle of the older cases of *Feagin v. Beasley*, 23 Ga. 17, and *Tilman v. Stringer*, 26 Ga. 171.

Further effort to make clear our view, as outlined in the opinion, would be a work of supererogation or a rechauffe of what we have already said.

*Motion denied. Carlisle, P. J., and Custer, J., concur.*